No. 18-1287

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

ANTHONY GANT,

        *Plaintiff – Appellee*,

*v.*

DANIEL HARTMAN,

        *Defendant – Appellant*.

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division
No. 1:16-cv-00380-TLS – Theresa L. Springmann, *Chief Judge*

_____

## BRIEF OF APPELLEE ANTHONY GANT

_____

David W. Frank
CHRISTOPHER C. MYERS & ASSOCIATES
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802-2307
(260) 424-0600
Email: dfrank@myers-law.com
Counsel for Plaintiff-Appellee, Anthony Gant

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Seventh Circuit Rule 26.1, counsel for Mr. Gant states as follows:

1. The name of every party that the undersigned attorney represents in the case:

    Anthony Gant

2. The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Christopher C. Myers & Associates

3. The parent corporations and any publicly held companies that own ten percent or more of the stock of the party represented by the attorneys:

    N/A

Respectfully submitted,

/s/ David W. Frank
David W. Frank
CHRISTOPHER C. MYERS & ASSOCIATES
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802-2307
(260) 424-0600
Email: dfrank@myers-law.com
Counsel for Plaintiff-Appellee, Anthony Gant

December 13, 2018

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................................... i

TABLE OF AUTHORITIES ......................................................................................... iv

JURISDICTIONAL STATEMENT ............................................................................ 1

STATEMENT OF THE ISSUE ................................................................................. 2

STATEMENT OF THE CASE ................................................................................. 3

SUMMARY OF ARGUMENT ................................................................................. 9

ARGUMENT ..................................................................................................... 11

    I.    THE COURT SHOULD DISMISS THE APPEAL FOR LACK OF JURISDICTION BECAUSE OFFICER DANIEL HARTMAN SEEKS REVIEW OF THE DISTRICT COURT'S DENIAL OF QUALIFIED IMMUNITY BASED ON DISPUTED FACTS AND NOT A QUESTION OF LAW …..….………………….…………….. 11

        A.  The standard of review provides jurisdiction for the Court to review Officer Hartman's appeal of the district court's denial of qualified immunity only if his argument is based on a question of law ………………..……….……. 11

        B.  The Court should dismiss Officer Hartman's appeal for lack of jurisdiction because he seeks review of the district court's denial of qualified immunity relying on issues of disputed fact and not on a question of law ……..…... 12

    II.   EVEN IF THE COURT HAS JURISDICTION, THE DISTRICT COURT'S JUDGMENT DENYING QUALIFIED IMMUNITY TO OFFICER HARTMAN SHOULD BE AFFIRMED BECAUSE IT WAS CLEARLY ESTABLISHED ON AUGUST, 23 2015 THAT USE OF DEADLY FORCE AGAINST A SUSPECT WHO AN OBJECTIVELY REASONABLE OFFICER WOULD NOT HAVE BELIEVED WAS ARMED AND RESISTING ARREST VIOLATED THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION …......... 16

        A.  The standard of review for determining whether qualified immunity is appropriate requires construing facts in Mr. Gant's favor and not importing genuinely disputed issues of fact ………….………………………………. 17

B.  In construing facts in Mr. Gant's favor without importing genuinely disputed issues of fact, the district court did not err in denying qualified immunity to Officer Hartman because it was clearly established in this circuit on August 23, 2015 that it was objectively unreasonable for an officer to use deadly force against an unarmed suspect not resisting arrest …………………………..... 17

CONCLUSION AND RELIEF SOUGHT ………....................................................... 25

CERTIFICATE OF COMPLIANCE ...................................................................... 26

CERTIFICATE OF SERVICE ................................................................................. 27

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) ……………………………...……....… 24

*Blossom v. Yarbrough*, 429 F.3d 963 (10th Cir. 2005) ……........................................…. 24

*California v. Hodari D.*, 499 U.S. 621 (1991) …………………………………………...…. 18

*Chelios v. Heavener*, 520 F.3d 678 (7th Cir. 2008) ……………………….…………...… 8-9

*Clash v. Beatty*, 77 F.3d 1045 (7th Cir. 1996) ……………………………………………...… 9

*Common v. City of Chi.*, 661 F.3d 940 (7th Cir. 2011) …………………...……………....… 18

*Ellis v. Wynalda*, 999 F.2d 243 (7th Cir. 1993) ……………………………..……………...… 9

*Estate of Clark v. Walker*, 865 F.3d 544 (7th Cir. 2017) ……………….…………….…...… 17

*Estate of Starks v. Enyart*, 5 F.3d 230 (7th. Cir. 1993) ……………………….……………...… 25

*Flynn v. Mills*, 361 F.Supp.2d 866 (S.D. Ind. 2005) ………………….…..………….…...… 24-25

*Ford v. Childers*, 855 F.2d 1271 (7th Cir. 1988) ……………………...….…………......… 19, 21-22

*Frane v. Kijowski*, 992 F.Supp. 985 (N.D. Ill. 1998) ……………………………………...… 24

*Gonzalez v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009) ……………………..…………...… 17

*Graham v. Connor*, 490 U.S. 386 (1989) ……………………………………….……….....… 9, 18

*Gutierrez v. Kermon*, 722 F.3d 1003 (7th Cir. 2013) ……………………...……….....… 1-2, 12, 15

*Hansen v. Bennett*, 948 F.2d 397 (7th Cir. 1991) …………………………...……….....… 11-12

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ……………........................................…. 17

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) …………………………….…………....… 14

*Jackson v. Curry*, 888 F.3d 259 (7th Cir. 2018) …………….…………………………… 1, 11

*Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988) …………………………………….....… 8

*Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917 (E.D. Wis. 1999) ………………...............… 8

*Johnson v. Jones*, 515 U.S. 304 (1995) ………….……………………...….……..……… 1, 11

*Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011) ….……………………………….……… 2, 12-13

*Lanigan v. Village of E. Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997) ……............................… 8

*Leaf v. Shelnutt*, 400 F.3d 1070 (7th Cir. 2005) …………………………………………....… 12

*Liebenstein v. Crowe*, 826 F.Supp. 1174 (E.D. Wis. 1992) …………………………..….....… 25

*Malley v. Briggs*, 475 U.S. 335 (1986) ……………………………………...……………..… 8

*Marion v. City of Corydon*, 559 F.3d 700 (7th Cir. 2009) ……………...….…………..… 19-20

*Marshall v. Allen*, 984 F.2d 787 (7th Cir. 1993) …………………………………………....… 8

*McKinney v. Duplain*, 463 F.3d 679 (7th Cir. 2006) …………………………………….....… 14

*Mullenix v. Luna*, 136 S. Ct. 305 (2015) …………………………………….……………..… 8

*Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883 (7th Cir. 2013) ……………………………………………………………...…….….. 12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ……………………………………………..… 17

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513 (7th Cir. 2012) …………….…………….....… 18, 23

*Rackovich v. Wade*, 850 F.2d 1180 (7th Cir. 1988) ……………………………………....… 8

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) ……………………………………....… 24

*Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364 (2009)…………………….………..… 23

*Sain v. Wood*, 512 F.3d 886 (7th Cir. 2008) ………………………….……………....… 14

*Sheehan v. Noble Cty. Sheriff's Dept.*, No. 1:14-CV-324, 2016 WL 7100555 (N.D. Ind. Dec. 6, 2016) ………………………………………………...…………………….....… 8

*Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) ……………………………………....… 24

*Stainback v. Dixon*, 569 F.3d 767 (7th Cir. 2009) ………………………………….....… 18

*Tennessee v. Garner*, 471 U.S. 1 (1985) …………………………………….....…… 9, 18-19, 21

*Terry v. Ohio*, 392 U.S. 1 (1968) …………………………………….……………....… 18

*Thompson v. City of Chi.*, 472 F.3d 444 (7th Cir. 2006) ………………..……………....… 19

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014) …………………………….……………....… 8, 22-23

*Tom v. Voida*, 963 F.2d 952 (7th Cir. 1992) …………………………………………...… 23-24

*Washington v. Haupert*, 481 F.3d 543 (7th Cir. 2007) ……………………..……………...… 14

*Weinmann v. McClone*, 787 F.3d 444 (7th Cir. 2014) ………………………..……………...… 19

*White v. Gerardot*, 509 F.3d 829 (7th Cir. 2007) …………..……………..…… 2, 9, 11, 14-16, 22-23

*White v. Pauly*, 137 S. Ct. 548 (2017) …………………………………………………...… 8

*Whitlock v. Brueggemann*, 682 F. 3d 567 (7th Cir. 2012) ………………………………...… 14

*Wood v. Strickland*, 420 U.S. 308 (1975) ………………………………..……………...… 8

## STATUTES, RULES, & AMENDMENTS

U.S. Const. amend. IV ……………………………....………………………………..…… passim

28 U.S.C. § 1291 …………………………………………...……………………...… 1, 11

28 U.S.C. § 1331 ……………………………………..……………..………………………… 1

28 U.S.C. § 1343 ……………………………………..……………..………………………… 1

42 U.S.C. § 1983 ……………………………………..……………..………..……………… 1, 3

## <u>JURISDICTIONAL STATEMENT</u>

Appellant Officer Daniel Hartman's jurisdictional statement is incomplete and, in part, incorrect.

The United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) has jurisdiction over the subject matter of Appellee Anthony Gant's constitutional claim brought under 42 U.S.C. § 1983 against Officer Hartman. On February 2, 2018, Chief Judge Theresa L. Springmann issued her Opinion and Order denying Officer Hartman's request for grant of qualified immunity from Mr. Gant's Fourth Amendment excessive force claim, which the officer sought in his Motion for Summary Judgment.

On February 8, 2018, Officer Hartman timely filed his Notice of Appeal from the district court's denial of qualified immunity.

However, the Court lacks jurisdiction to review the district court's denial of qualified immunity as an appealable collateral order under 28 U.S.C. § 1291 because Officer Hartman seeks review of the district court's judgment not on the basis of a question of law but on the on the basis of disputed facts and in an attempt to contest facts, resolve contested factual matters, and challenge the undisputed facts as determined by the district court in its rejection of his request for qualified immunity. *See, e.g., Johnson v. Jones*, 515 U.S. 304, 311 (1995); *Jackson v. Curry*, 888 F.3d 259, 262 (7th Cir. 2018) ("But the exception providing jurisdiction over denials of qualified immunity is limited to pure legal questions. We only have jurisdiction when the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law. Thus, defendants cannot immediately appeal factual determinations regarding qualified immunity." (citations and quotation marks omitted)); *Gutierrez v. Kermon*, 722 F.3d 1003, 1010-11 (7th Cir.

2013) ("this court has held that an appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument. Even if the appellant disclaims any attempt to challenge the district court's conclusion that genuine factual disputes exist, we lack jurisdiction when his argument on appeal depends upon and is inseparable from disputed facts." (internal citations omitted)); *Jones v. Clark*, 630 F.3d 677, 680-81 (7th Cir. 2011) ("as we have already noted, the district court decided that factual disputes prevented resolution of the officers' qualified immunity claim . . . . these conclusions represent factual determinations that cannot be disturbed in a collateral-order appeal."); *White v. Gerardot*, 509 F.3d 829, 836-37 (7th Cir. 2007) ("Because there is an issue of material fact as to whether [the suspect] was surrendering with his hands in the air, [the defendant-appellant's] argument necessarily depends on his version of the facts. Indeed, [the defendant-appellant] would be hard pressed to develop any purely legal argument for why he is entitled to qualified immunity if [the suspect] had his hands in the air and was surrendering, as alleged . . . and as assumed by the district court. [The defendant-appellant's] legal arguments are wholly dependent upon, and inseparable from, his reliance on disputed facts and therefore we conclude that we do not have jurisdiction to consider his appeal. *** Accordingly, we dismiss the appeal for lack of jurisdiction.").

## STATEMENT OF THE ISSUES

### I.

Whether the Court has jurisdiction to review the district court's denial of qualified immunity to Officer Daniel Hartman.

### II.

If the Court has jurisdiction, whether the judgment of the district court denying Officer

Daniel Hartman's request for qualified immunity should be affirmed.

## STATEMENT OF THE CASE

Appellee Anthony Gant filed the action below on November 3, 2016 in the United States District Court for the Northern District of Indiana bringing claims pursuant to 42 U.S.C. § 1983 including a claim against City of Fort Wayne Police Department Officer Daniel Hartman alleging the officer used deadly, excessive, and objectively unreasonable force in violation of the Fourth Amendment to the United States Constitution when the officer shot him in the stomach while he was unarmed, empty-handed, and not resisting arrest on August 23, 2015 in Fort Wayne, Indiana. *See* Compl. (Dkt. 1); First Amend. Compl. (Dkt. 27).

Officer Hartman, and the other defendants below, filed their Motion for Summary Judgment on October 25, 2017. *See* Motion for Summary Judgment; Memorandum in Support; Notice of Manual Filing of Video Recordings (Dkt. 37-39). Officer Hartman requested summary judgment on Mr. Gant's Fourth Amendment claim against him, along with qualified immunity, arguing, as he does here, that, despite two video recordings of the incident showing Mr. Gant to be unarmed and not resisting arrest, he believed he saw a gun in Mr. Gant's hand and because he believed he saw a gun in Mr. Gant's hand he was legally justified in the use of deadly force against him. *Id*.

In response to Officer Hartman's Motion for Summary Judgment, Mr. Gant argued in his November 11, 2017 Brief in Opposition that genuine issues of material fact remained in dispute and precluded the grant of summary judgment and qualified immunity to Officer Hartman. *See* Response in Opposition to Motion for Summary Judgment; Brief in Opposition (Dkt. 40-41). Mr. Gant argued that these disputed issues of fact included whether there was any evidence to support Officer Hartman's assertion that a reasonable officer could conclude, as Officer Hartman

did on August 23, 2015 in Fort Wayne, Indiana, that an individual observed and documented by the evidence to have nothing in his hands had in fact not only something in his hands, but a gun, and, further, that the supposed evidence of the presence of a gun where nothing existed was so apparent that shooting this empty-handed individual was warranted and not clearly in violation of the Fourth Amendment to the United States Constitution. *Id*.

Mr. Gant argued that though Officer Hartman claimed he believed he saw Mr. Gant holding an object and that he believed the object he thought he saw was a gun, such an assertion was inexplicable and could not be shared by an objectively reasonable officer. *Id*. Mr. Gant observed that not only did he not have a gun in his hands, he had nothing in his hands at all, and it was undisputed that Officer Hartman's view of Mr. Gant's hands was unobscured. *Id*. Mr. Gant noted that Officer Hartman's justification for the August 23, 2015 shooting of him at a Fort Wayne, Indiana convenience store was, in the officer's own words, as follows: "I observed what I believed to be a handgun in Mr. Gant's hand. I began yelling commands. Given the extremely close proximity between Mr. Gant and myself, I was fearful for my life. I discharged two rounds from my firearm, one of which struck Mr. Gant in the abdomen." *See* Response in Opposition (Dkt. 40), Ex. 1 at 3. Officer Hartman confirmed his justification for the shooting elsewhere: "Anthony Gant appeared to be holding what I believed to be a gun." *Id*., Ex. 2 at 1.

Putting into dispute the notion that a reasonable officer could have seen a gun in Mr. Gant's hands where none existed, two other City of Fort Wayne Police Department officers with Officer Hartman at the exact moment Officer Hartman shot Mr. Gant neither shot at Mr. Gant nor saw anything in Mr. Gant's empty hands that appeared to them to be a handgun. *See* Response in Opposition, Ex. 3 at 1; Response in Opposition, Ex. 4 at 1. Further, as Mr. Gant noted, the Fort Wayne Police Department's own investigation of the shooting found that Mr.

Gant was unarmed when the two shots were fired at Mr. Gant from Officer Hartman's Glock 17. *See Id.*, Ex. 6 at 1. When Officer Hartman shot Mr. Gant, he aimed for the center mass of Mr. Gant's body with the understanding that the doing so could kill Mr. Gant. *See Id.*, Ex. 7 at 19. Officer Hartman stated he believed Mr. Gant was a criminal suspect rather than a customer when Mr. Gant came to the entrance of the convenience store on August 23, 2015 because, typically, in that type of criminal investigation, there were two suspects, and Mr. Gant was the second of two people he saw. *Id.* at 21-22. This is the sole reason Officer Hartman thought Mr. Gant was a suspect and not a convenience store customer. *Id.* When asked whether he thought Mr. Gant had a handgun because of the way Mr. Gant moved his hands or, rather, because he believed there was actually an object in Mr. Gant's hands, Officer Hartman specified he believed Mr. Gant had a gun in his left hand because he thought he saw a gun there: "It was an object that he was holding in his hand that I believed to be a handgun." *Id.* at 27.

Mr. Gant further noted that in Officer Hartman's own in-car video recording of the August 23, 2015 events it can be seen Mr. Gant had no object, and certainly not a gun, in his left hand when Officer Hartman shot him. *See* Motion for Summary Judgment (Dkt. 37), Ex. D. The encounter between Mr. Gant and Officer Hartman happens around the 4:19 minute mark of this video, where Mr. Gant is shot almost immediately after he appears empty-handed to officers. *Id.* It can be seen from the video that officers' descriptions of Mr. Gant "crashing" out the front door of the store or refusing to obey orders are not accurate. *Id.* Mr. Gant noted that what the video evidence showed, in fact, was that he appeared at the front door of the store, stood there briefly, and was shot as he was getting to the ground or immediately before he got to the ground. *Id.* Specifically, the video shows city officers stationed at the front door of the convenience store when, before Mr. Gant appears at the door, one man, who is not Mr. Gant, runs out. *Id.* This

man is not shot. *Id.* Mr. Gant then appears standing at the front door of the store, encounters the officers' commands, and almost instantly begins to get on the ground – either in response to officers' commands or because he was shot on-sight when he appeared at the front door and as a result is caused to fall. *Id.* The video recording, therefore, demonstrates that one of two scenarios occurred: (1) Mr. Gant was shot almost instantly after he appeared unarmed at the front of the store or (2) Mr. Gant was shot only a moment later while descending to the ground in compliance with the commands of officers. *Id.* Later descriptions by Officer Hartman of Mr. Gant supposedly menacingly "staring" him down or aggressively "orienting" himself to Mr. Gant are an interpretation of events not supported by the evidence. *Id.* A fellow officer's in-car video recording of the shooting shows the same events. *See* Motion for Summary Judgment, Ex. E (encounter between Officer Hartman and Mr. Gant occurring around minute 4:06).

On February 2, 2018, Chief Judge Theresa L. Springmann issued her Opinion and Order denying Officer Hartman's request for summary judgment and grant of qualified immunity from Mr. Gant's Fourth Amendment excessive force claim, but granting dismissal of Mr. Gant's claims against other defendants. *See* Appellant's Short Appendix at 38-53, (Dkt. 43 below). In its order denying Officer Hartman qualified immunity, the district court described the undisputed facts of this case as follows:

> On August 23, 2015, Defendants Hartman and [City of Fort Wayne Police Department Officer Bradley] Griffin responded to a call regarding an armed robbery at a Dollar General store. Other police officers soon arrived at the scene, including Defendant [City of Fort Wayne Police Department Officer Jason] Palm. Previously, there had been multiple armed robberies at various Dollar General stores in the City of Fort Wayne, which were carried out in similar fashion. Typically, two men would enter the store, display hand guns, confine/zip tie employees, wait for registers to open, and depart, taking cash, cigarettes, and employees' cell phones.
>
> As Defendant Hartman approached the front door of the Dollar General on August 23, 2015, the first suspect, later identified as Christopher Johnson, ran out the front entrance. After determining that the person was a suspect and not a victim, Defendant Hartman

commanded Johnson to stop and get on the ground, but Johnson ignored him and kept running. Soon after, the second suspect, later identified as Anthony Gant, exited the store through the front entrance.

Defendant Hartman also commanded Gant to stop and get down on the ground. Defendant Hartman stated that he was fearful for his life because there was no cover available to him and believed that Gant was holding a handgun. Defendant Hartman discharged two rounds from his firearm, one of which struck Gant in the abdomen. It was later determined that Gant was not holding a handgun.

Defendants Griffin and Palm testified that, while observing Johnson running across the parking lot despite being commanded to stop and while concerned for their safety and the safety of others, they heard shots fired. Defendant Palm began to pursue Johnson. Defendant Griffin took the canine that was with him to the front door of the store and observed the Plaintiff in a seated position inside the vestibule. Defendant Griffin ordered the Plaintiff to get on the ground at which point the Plaintiff informed Defendant Griffin that he had been shot. Defendant Griffin called for an ambulance, handcuffed the Plaintiff, and told him to lie down.

An ambulance arrived about two minutes later. However, Defendant Griffin did not allow ambulance personnel to approach the Plaintiff until the scene had been cleared, which occurred about four minutes later. A total of six minutes elapsed between the time at which Defendant Griffin called the ambulance and the time at which emergency medical personnel were able to administer aide.

Defendant Hartman stated that when he shot the Plaintiff, he believed that the Plaintiff had a handgun in his left hand, and when the Plaintiff turned towards Defendant Hartman and began moving his hand toward the center of his body, Defendant Hartman feared for his life.

Neither Defendant Griffin nor Palm saw anything in the Plaintiff's hands that appeared to be a handgun. Defendant Hartman states that the Plaintiff showed no signs of following the command to get on the ground, but the Plaintiff argues that he was given no chance to obey because he was shot almost immediately after exiting the store.

The incident was captured by Defendants Hartman and Griffin's in-car cameras.

Short App., Opinion and Order at 39-40.

The district court explained its reasoning for denying qualified immunity to Officer Hartman in the following passage of its order:

*Whether Defendant Hartman is Entitled to Qualified Immunity*

Regardless of whether his use of deadly force was reasonable, Defendant Hartman argues

that he is entitled to qualified immunity. "The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993) (internal quotation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The matter of qualified immunity is for the court, not the jury, to decide. *Jones v. City of Chi*., 856 F.2d 985 (7th Cir. 1988); *Rackovich v. Wade*, 850 F.2d 1180 (7th Cir. 1988).

Issues on summary judgment regarding qualified immunity require a two-pronged inquiry. "The first asks whether the facts, taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotations and alteration omitted). The second asks "whether the right in question was 'clearly established' at the time of the violation." *Id*. at 1866. Courts may decide these two prongs in any order, "[b]ut under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id*. The Court has already determined that there are genuine issues of material fact regarding the first prong.

Under the second prong, "the salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Id*. (internal quotations and alteration omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). It is a "long standing principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Thus, "[t]he general principle that deadly force requires a sufficient threat hardly settles [the] matter," as it is the particular conduct based on the circumstances of the case that must have been clearly established as constitutionally impermissible. *Mullenix*, 136 S. Ct. at 309. Knowledge of basic constitutional rights "imposes neither an unfair burden upon a person assuming a responsible public office requiring a high degree of intelligence and judgment for the proper fulfillment of its duties, nor an unwarranted burden in light of the value which civil rights have in our legal system." *Wood v. Strickland*, 420 U.S. 308, 322 (1975).

"The Seventh Circuit has recognized . . . that the excessive force standard is well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917, 930 (E.D. Wis. 1999) (citing *Lanigan v. Village of E. Hazel Crest, Ill*., 110 F.3d 467, 467–67 (7th Cir. 1997)). "Establishing that the use of force in a particular case was 'so plainly excessive' requires a fair amount of factual development." *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008).

And, "[i]f a jury finds that any of the Defendants [sic] officers are liable for excessive force, then by definition they would not be entitled to qualified immunity." *Sheehan v. Noble Cty. Sheriff's Dept*., No. 1:14-CV-324, 2016 WL 7100555, at *13 (N.D. Ind. Dec. 6, 2016).

Thus, "if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). *Ellis v. Wynalda*, 999 F.2d 243, 246 (7th Cir. 1993) (citing *Graham*, 490 U.S. at 396 and *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)) (reversing grant of summary judgment as to qualified immunity where reasonable jury could find force excessive). That is, where there is a question of fact regarding whether the use of deadly force is justified, a defendant is not entitled to summary judgment on the issue of qualified immunity. Where there are factual disputes regarding the relationship between the force used and the threatened harm, "a trial [is] required before determining whether the officer should have known in the circumstances presented that the [force] was plainly excessive." *Chelios*, 520 F.3d at 692 (internal quotations omitted)

In *White v. Gerardot*, the Seventh Circuit found that questions of fact precluded a finding of qualified immunity under similar circumstances. In *White*, the defendant claimed he was in fear for his life because he believed that the suspect had a gun and that, despite his commands for the suspect to raise his hands, the suspect "was moving his hands in front of him as if he were reloading his gun." 509 F.3d 829, 834 (7th Cir. 2007). However, the plaintiff's characterization of the event conflicted with the defendant's. The plaintiff produced evidence tending to show that the suspect was not, in fact, disobeying the defendant's commands and that the suspect did not, in fact, have a gun in his hands when the defendant shot him. *Id*. at 835. Thus, the Seventh Circuit found it had no jurisdiction to review the district court's denial of summary judgment on qualified immunity because of these issues of disputed material fact. *Id*. In the instant case, it was determined that, at the time Defendant Hartman shot the Plaintiff, the Plaintiff did not in fact have a gun in his hands, and a reasonable juror could conclude that he was in the process of obeying Defendant Hartman's commands. Therefore, the Court cannot grant summary judgment as to qualified immunity regarding the Plaintiff's claim for excessive force against Defendant Hartman.

Short App., Opinion and Order at 43-45 (underlined emphasis added).

Officer Hartman filed his immediate appeal from the district court's denial of qualified immunity to this Court on February 8, 2018. *See* Notice of Appeal. On November 13, 2018, Officer Hartman filed his Brief in support of his appeal. *See* Appellant Officer Daniel Hartman's Brief and Short Appendix.

## **SUMMARY OF ARGUMENT**

The Court should dismiss Officer Daniel Hartman's immediate appeal for lack of jurisdiction. For the Court to have jurisdiction over his appeal, Officer Hartman's request for

review of the district court's denial of qualified immunity must be based on a question of law. However, Officer Hartman's appeal, despite his insistence otherwise, is based entirely on disputed facts. Officer Hartman asks the Court to conclude that he reasonably believed Mr. Gant had a gun in hands and that he reasonably believed Mr. Gant was resisting arrest and, upon such findings, award him qualified immunity. But whether an objectively reasonable officer would have believed Mr. Gant had a gun in his hands when, in fact, he had nothing in his hands, and whether a reasonable officer would have believed Mr. Gant was resisting officers when, in fact, he was not, are factual disputes. Officer Hartman's request to reconsider the district court's opinion the presence of these factual disputes is not a reviewable collateral order appeal.

Officer Hartman's appeal should be dismissed.

Even if the Court has jurisdiction to review Officer Hartman's request for qualified immunity, the Court should affirm the district court's denial of his request. It was clearly established in this circuit at the time Officer Hartman shot Mr. Gant on August 23, 2015 in Fort Wayne, Indiana that it was objectively unreasonable for an officer to shoot an unarmed suspect not resisting arrest. Construing the facts in Mr. Gant's favor without resolving genuine issues of material fact – including whether an objectively reasonable officer would have believed Mr. Gant had a gun in his hands when, in fact, he had nothing in his hands, and whether a reasonable officer would have believed Mr. Gant was resisting officers when, in fact, he was not – the district court did not err in denying qualified immunity to Officer Hartman on Mr. Gant's Fourth Amendment excessive force claim against.

If the Court determines it has jurisdiction to review Officer Harman's appeal, the district court's judgment should be affirmed.

<u>**ARGUMENT**</u>

I.   **THE COURT SHOULD DISMISS THE APPEAL FOR LACK OF JURISDICTION BECAUSE OFFICER DANIEL HARTMAN SEEKS REVIEW OF THE DISTRICT COURT'S DENIAL OF QUALIFIED IMMUNITY BASED ON DISPUTED FACTS AND NOT A QUESTION OF LAW.**

Officer Hartman's appeal should be dismissed for lack of jurisdiction.  To be reviewable, a collateral order appeal of denial of qualified immunity must be based on a question of law. However, Officer Hartman's appeal is based entirely on factual disputes.  Therefore, the Court lacks jurisdiction, and the officer's appeal should be dismissed.

A.   **The standard of review provides jurisdiction for the Court to review Officer Hartman's appeal of the district court's denial of qualified immunity only if his argument is based on a question of law.**

A district court's denial of summary judgment is generally an unappealable interlocutory order.  *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007).  Denial of qualified immunity at summary judgment may be reviewed as an appealable collateral order under 28 U.S.C. § 1291, however, where the appeal is based on a pure question of law.  *Jackson v. Curry*, 888 F.3d 259, 262 (7th Cir. 2018).  But the appellate court lacks jurisdiction to review such an appeal if it is based on disputed facts and not a question of law.  *Id.*  "[T]he exception providing jurisdiction over denials of qualified immunity is limited to pure legal questions.  We only have jurisdiction when the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.  Thus, defendants cannot immediately appeal factual determinations regarding qualified immunity."  *Id.*  (citations and quotation marks omitted).  The appellate court will review the record to determine if it is able to decide the question of qualified immunity presented without resolving issues of disputed fact. *Johnson v. Jones,* 515 U.S. 304, 319-20 (1995) (unanimous).  "If we find that we cannot, then we

lack jurisdiction over the appeal of that question." *Hansen v. Bennett,* 948 F.2d 397, 399 (7th Cir. 1991) (citation omitted). On appeal, the reviewing court cannot "make conclusions about which facts the parties ultimately might be able to establish at trial" or decide arguments that "depend on the outcome of a disputed factual question." *Leaf v. Shelnutt,* 400 F.3d 1070, 1078 (7th Cir. 2005). The existence of factual disputes as recognized by the district court "cannot be disturbed in a collateral-order appeal." *Jones v. Clark*, 630 F.3d 677, 681 (7th Cir. 2011). "[T]his court has held that an appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument. Even if the appellant disclaims any attempt to challenge the district court's conclusion that genuine factual disputes exist, we lack jurisdiction when his argument on appeal depends upon and is inseparable from disputed facts." *Gutierrez v. Kermon*, 722 F.3d 1003, 1010-11 (7th Cir. 2013) (internal citations omitted).

The party asserting jurisdiction has the burden of establishing it. *Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 893 (7th Cir. 2013).

> **B. The Court should dismiss Officer Hartman's appeal for lack of jurisdiction because he seeks review of the district court's denial of qualified immunity relying on issues of disputed fact and not on a question of law.**

Here, the Court should dismiss Officer Daniel Hartman's appeal for lack of jurisdiction. For the Court to have jurisdiction over the appeal, Officer Hartman's request for review of the district court's denial of qualified immunity must be based on a question of law. However, Officer Hartman's appeal, though he attempts to characterize it otherwise, is based on disputed facts, assumes his version of facts to be true, construes evidence in his favor, and rejects the district court's presentation of the relevant facts and issues in dispute. The premise of Officer Hartman's

argument is that his version of disputed facts is true and his conclusion is that because his version of facts are true his use of deadly force against Mr. Gant did not violate clearly established law. While Officer Hartman labels his own argument as one raising a question of law, it does not. Rather, his contention throughout his Brief is that if the district court would have only resolved genuinely disputed of issues of fact in his favor, it would have found that his actions did not violate the case law he believes to be of assistance to him. Officer Hartman asks the Court to conclude that he reasonably believed Mr. Gant was armed and resisting arrest and, having resolved these disputes, award him qualified immunity. But whether an objectively reasonable officer would have believed Mr. Gant had a gun in his hands and whether an objectively reasonable officer would have believed Mr. Gant was resisting arrest are the central factual disputes of this case. Officer Hartman's request to reconsider the district court's opinion finding the presence of these factual disputes is not a reviewable collateral order appeal. Officer Hartman's appeal should be dismissed.

Officer Hartman's argument on appeal is based on and inseparable from disputed facts. *See* Appellant's Brief at 12-27. While Officer Hartman claims he is seeking review of the district court's judgment based on "undisputed facts," he is, in truth, requesting acceptance of his proffered factual conclusions in a "back-door effort" to contest facts on appeal. *Jones*, 630 F.3d at 680. As Officer Hartman states in his own Summary of Argument: "A reasonable officer could have concluded that Anthony Gant was involved in an armed robbery, was armed, and that Gant moved his left arm in the same way that one would move a gun in the course of pointing it toward Officer Hartman to shoot. Therefore, this Court should reverse the District Court's Order denying Daniel Hartman's summary judgment motion and enter an order granting summary judgment for Officer Hartman on the basis of qualified immunity." Appellant's Brief at 12. Officer Hartman's argument, therefore, is premised on the two central issues of disputed fact in this case: whether an

objectively reasonable officer would have believed Mr. Gant was armed (when he was not), and whether an objectively reasonable officer would have believed Mr. Gant was resisting arrest (when he was not).

The district court found the disputed factual issues in this case to include whether an objectively reasonable officer would have believed Mr. Gant was armed and resisting arrest to such a degree that Officer Hartman was permitted under law to use deadly force. *See* Short App., Opinion and Order at 39-40, 43-45. Officer Hartman may either accept the district court's description of the undisputed facts or Mr. Gant's description of the undisputed facts, but he cannot now describe factual conclusions he believes to be true as "undisputed" when they previously have been determined to be disputed by the district court and are presently in active dispute by Mr. Gant. *See Sain v. Wood*, 512 F.3d 886, 891 (7th Cir. 2008); *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007); *Washington v. Haupert*, 481 F.3d 543, 549-50 (7th Cir. 2007). Even if Officer Hartman is to claim he is only challenging the district court's inferences as to the facts or its description of the undisputed facts, the Court does not have jurisdiction to review his appeal. *See Hurt v. Wise*, 880 F.3d 831, 839-40 (7th Cir. 2018); *Whitlock v. Brueggemann*, 682 F. 3d 567, 573-75 (7th Cir. 2012). Because Officer Hartman's appeal is inseparable from disputed facts, it should be dismissed for lack of jurisdiction. *See McKinney v. Duplain*, 463 F.3d 679, 688-90 (7th Cir. 2006).

This Court lacks jurisdiction to review the immediate appeal because Officer Hartman's argument is based on, built upon, and analyzed through disputed facts that he concludes must be resolved in his favor. *See* Appellant's Brief at 4-27. While Officer Hartman does acknowledge the district court's opinion denying him summary judgment based on qualified immunity, he fails to accept either the district court's version of the facts or that of the appellee for purposes of the

appeal. This begins by jockeying for acceptance of the version of facts that he had wished the district court had accepted as conclusive in his description of "Additional Undisputed Facts." *Id.* at 4-12. But the self-serving conclusions drawn in this section of the brief are in dispute – namely, whether an objectively reasonable officer could have believed Mr. Gant was armed and resisting arrest. *Id.*

Officer Hartman's argument here is an almost identical re-argument of his request for qualified immunity below and fails to raise any pure question of law. *See* Memorandum in Support (Dkt. 38). The Court does not have jurisdiction to review an argument based on disputed facts rather than a question of law, regardless of how the argument is characterized by the appellant. *See Gutierrez*, 722 F.3d at 1010-11. Officer Hartman protests he "is not asking this Court to resolve factual disputes" and in his brief's Standard of Review section underlines a number of quotations on the page regarding undisputed facts. *See* Appellant's Brief at 13. It appears the reason for this is to persuade the Court the evidence he summarizes and conclusions he himself draws transforms issues of disputed fact into undisputed facts which entitle him to qualified immunity. Officer Hartman further claims he only "is asking the Court to consider all the undisputed evidence in the record". *Id.* at 14. However, that is what the district court has already done, and what he is not doing. He is asking the Court to review and rule on factual disputes, resolve the disputes in his favor, and grant him qualified immunity on that basis.

The case law Officer Hartman cites, controlling and otherwise, in the remainder of his brief can only begin to be viewed as favorable to his argument if disputed facts are considered and resolved in his favor. *Id.* at 14-27. Factual disputes are inseparable from his appeal. *See White*, 509 F.3d at 837. For purposes of Officer Hartman's entire argument, the factual disputes of whether Mr. Gant was reasonably believed to be armed and reasonably believed to be resisting

arrest must be reviewed and his account concerning these events credited. The Court does not have jurisdiction to hear such an appeal. The Court has received and dismissed similarly designed appeals before. In a passage that could be quoted in dismissing Officer Hartman's appeal here, the Court previously observed: "Because there is an issue of material fact as to whether [the suspect] was surrendering with his hands in the air, [the defendant-appellant's] argument necessarily depends on his version of the facts. Indeed, [the defendant-appellant] would be hard pressed to develop any purely legal argument for why he is entitled to qualified immunity if [the suspect] had his hands in the air and was surrendering, as alleged . . . . [The defendant-appellant's] legal arguments are wholly dependent upon, and inseparable from, his reliance on disputed facts and therefore we conclude that we do not have jurisdiction to consider his appeal." *White*, 509 F.3d at 836-37. Officer Hartman's legal argument is wholly dependent on factual disputes. His appeal should be dismissed for lack of jurisdiction.

II.    **EVEN IF THE COURT HAS JURISDICTION, THE DISTRICT COURT'S JUDGMENT DENYING QUALIFIED IMMUNITY TO OFFICER HARTMAN SHOULD BE AFFIRMED BECAUSE IT WAS CLEARLY ESTABLISHED ON AUGUST, 23 2015 THAT USE OF DEADLY FORCE AGAINST A SUSPECT WHO AN OBJECTIVELY REASONABLE OFFICER WOULD NOT HAVE BELIEVED WAS ARMED AND RESISTING ARREST VIOLATED THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

The judgment of the district court denying qualified immunity to Appellant Officer Daniel Hartman should be affirmed even if jurisdiction is found to review the immediate appeal. On August 23, 2015, when Officer Hartman shot Mr. Gant in Fort Wayne, Indiana, controlling precedent clearly established that an officer's use of deadly force against an unarmed non-resisting suspect is objectively unreasonable and in violation of the Fourth Amendment to the U.S. Constitution. Based on the undisputed facts in the record, construing the facts in Mr. Gant's favor, and without resolving issues of disputed material fact, a reasonable juror could find Officer

16

Hartman shot Mr. Gant while he was unarmed and not resisting arrest.  If there is jurisdiction to hear this appeal, the judgment of the district court denying qualified immunity to Officer Hartman should be affirmed.

**A. The standard of review for determining whether qualified immunity is appropriate requires construing facts in Mr. Gant's favor and not importing genuinely disputed issues of fact.**

A district court's denial of a request for summary judgment based on qualified immunity is reviewed *de novo*.  *See Estate of Clark v. Walker*, 865 F.3d 544, 549 (7th Cir. 2017).  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The appellate court in reviewing a defendant-appellant's request for qualified immunity conducts a two-part inquiry: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time."  *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

**B. In construing facts in Mr. Gant's favor without importing genuinely disputed issues of fact, the district court did not err in denying qualified immunity to Officer Hartman because it was clearly established in this circuit on August 23, 2015 that it was objectively unreasonable for an officer to use deadly force against an unarmed suspect not resisting arrest.**

Here, even if the Court has jurisdiction to review the district court's denial of qualified immunity to Officer Hartman, the Court should affirm the district court's judgment.  On August 23, 2015 in Fort Wayne, Indiana, when Officer Hartman shot Mr. Gant, controlling precedent clearly established that it was objectively unreasonable for an officer to shoot an unarmed suspect

who is not resisting arrest. Construing the facts in Mr. Gant's favor without resolving genuine factual issues in dispute – including whether an objectively reasonable officer would have believed Mr. Gant had a gun in his hands when he had nothing in his hands, and whether a reasonable officer would have believed Mr. Gant was resisting arrest when he was not – the Court should find that the district court did not err in denying qualified immunity to Officer Hartman on Mr. Gant's Fourth Amendment excessive force claim. If the Court determines it has jurisdiction to review Officer Harman's appeal, the district court's judgment denying the officer's request for qualified immunity should be affirmed.

First, it was clearly established in this circuit on August 23, 2015 that an officer's use of deadly force against an unarmed suspect not resisting arrest is unconstitutional and objectively unreasonable. The Fourth Amendment to the U.S. Constitution protects individuals from unreasonable searches and seizures by police officers. U.S. Const. amend. IV; *California v. Hodari D.*, 499 U.S. 621, 624 (1991). Its protections restrict an officer's use of force during a search or seizure. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A police officer's use of force under this analysis violates the Fourth Amendment when it is objectively unreasonable or unnecessary under the given set of circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The application and level of force used by an officer "is circumscribed by the Fourth Amendment's insistence on reasonableness." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). A police officer's use of force, therefore, is reviewed to determine if it was objectively reasonable. *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011). An officer's subjective belief concerning the reasonableness of the force applied is not relevant to the inquiry. *Graham*, 490 U.S. at 397. Use of force by a police officer is objectively unreasonable and excessive if, judging from the totality of the circumstances existing at the time, the officer uses

greater force than necessary in the situation. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

An officer's use of deadly force against a suspect, likewise, is examined to determine if it was objectively reasonable and in conformity with the Fourth Amendment. Use of deadly force may be objectively reasonable where an officer has probable cause to believe that a suspect poses an imminent threat of serious physical harm to himself or others, including through use of a firearm. *Garner*, 471 U.S. at 7; *Marion v. City of Corydon*. 559 F.3d 700, 705 (7th Cir. 2009). However, an officer's use of deadly force outside this context is not reasonable. For instance, an officer's use of deadly force is unreasonable if used only to prevent a fleeing felon's escape. *Garner*, 471 U.S. at 11-12. A criminal suspect "has a right not to be seized through the use of deadly force unless he puts another person (including a police officer) in imminent danger or he is actively resisting arrest and the circumstances warrant that degree of force." *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2014). "[T]he firing of a weapon must never become an automatic response to the law enforcement officer when attempting to capture a fleeing felon." *Ford v. Childers*, 855 F.2d 1271, 1276 (7th Cir. 1988). The determination of the existence of probable cause for the use of deadly force is "usually a jury question." *Id*. at 1275.

Second, the facts, taken in the light most favorable to Mr. Gant, and without resolving issues of disputed fact, would permit a reasonable juror to conclude that on August 23, 2015 Officer Hartman used deadly force against Mr. Gant even though an objectively reasonable officer would have concluded that Mr. Gant was unarmed and not resisting arrest. To begin with, while Mr. Gant has no method to test the genuineness of Officer Hartman's recollection of his impression of events, the officer's subjective beliefs concerning the presence of an object and calculation that this non-existent object was a gun are not relevant to use of force inquiry into whether that belief

provided a sufficient formation for the use of deadly force against Mr. Gant. *See Marion*, 559 F.3d at 705. The test is what an objectively reasonable officer would have believed, and Mr. Gant presents evidence that an objectively reasonable officer would not have formed the opinion that Mr. Gant held an object in his empty hands which was a handgun and on that basis used deadly force against him. It is undisputed Mr. Gant was unarmed when shot. *See* Response in Opposition (Dkt. 40), Ex. 6 at 1. It is undisputed two fellow city officers on the scene with Officer Hartman when he also saw Mr. Gant's hands with an unobstructed view did not believe Mr. Gant had a handgun. *Id.*, Ex. 3 at 1; Ex. 4 at 1. Officer Hartman's own in-car video recording shows Mr. Gant had no object, and certainly no gun, in his hands. *See* Motion for Summary Judgment (Dkt. 37), Ex. D. Mr. Gant presents evidence genuinely disputing Officer Hartman's assertion that a reasonable officer could have seen an object that was a gun in Mr. Gant's hands. Again, the video recordings of the shooting show Mr. Gant appear in the frame, stand, not flee, and, almost instantly after officers yell commands at him to get on the ground, to begin to get on, or fall to, the ground after, or while, he is being shot by Officer Daniel Hartman. *Id.*, Ex. D and E.

The factual conclusions insisted upon by Officer Hartman's retained expert do not provide justification for the use of deadly force either. *See* Appellant's Brief at 10-12, 17-19. The report concludes that because Mr. Gant "moved his left arm in the same way that one would move a gun in the course of pointing it," Officer Hartman was entitled to shoot Mr. Gant. *Id.* at 12. But that conclusion contradicts Officer Hartman's own justification for the supposed reasonableness of his of shooting Mr. Gant. Officer Hartman has repeatedly stated that it was an object he saw, unseen by his fellow officers, that led him to believe it would have been reasonable for an officer to conclude as he did that Mr. Gant had a handgun. *See* Response in Opposition, Ex. 1 at 3, Ex. 2 at 1. As Officer Hartman testified when asked whether he thought

Mr. Gant had a handgun because of how Mr. Gant moved his hand or, rather, because he believed Mr. Gant had a gun based on of a perceived object in his hand, Officer Hartman answered: "It was an object that he was holding in his hand that I believed to be a handgun." *Id.*, Ex. 7 at 27.

Officer Hartman attempts to construct a presentation of a number of cases including *Ford v. Childers*, 855 F.2d 1271 (7th Cir. 1988) to stand for the proposition that an officer needs nothing more than his own stated belief to conclude a suspect is armed and dangerous and subject to the infliction of deadly force. *See* Appellant's Brief at 20-21. But Officer Hartman's summary of *Ford* and other case law on this issue is too imprecise and overgeneralized for an accurate analysis. What the appeals court held in *Ford* was, like in *Tennessee v. Garner*, that if an objectively reasonable officer would believe a fleeing felon presents an objectively imminent threat of serious harm to the officer or others, the use of deadly force is reasonable. *Ford*, 855 F.2d at 1274-76. In *Ford*, the suspect shot was, unlike Mr. Gant, masked, fleeing, refusing to halt, and was seen by the shooting officer to be holding victims at gunpoint, although the officer's view of the suspect, unlike the view of Officer Hartman, was obstructed. *Id.* In the immediate case, not only was Mr. Gant unarmed and not resisting arrest, Officer Hartman could see Mr. Gant's hands without obstruction and observe immediately that he was empty-handed. Officer Hartman cannot now demand his unsupported assertion that he believed he saw Mr. Gant hold a gun in his hands be taken for the reasonable belief element in a use of deadly force analysis because he subjectively perceives his belief to be true. "[W]e are impelled to emphasize that this court must and will continue to be vigilant in ensuring that when an officer makes the critical judgment to use deadly force, his or her actions will be subject to scrutiny and review. As noted above, an officer oftentimes has only a split second to make the critical judgment of whether to use his weapon. But this fact alone will

never immunize an otherwise unreasonable use of deadly force." *Id*. at 1276.

The appellant quibbles with the district court's citation of *White v. Gerardot,* 509 F.3d 829 (7th Cir. 2007) and its recognition that it was clearly established on August 23, 2015 in this circuit that subjecting an unarmed non-resisting suspect to deadly force is objectively unreasonable under the Fourth Amendment to the U.S. Constitution. *See* Short App., Opinion and Order at 45; Appellant's Brief at 16-17. Officer Hartman argues, incorrectly, that *White v. Gerardot* is inapplicable because he believes Mr. Gant resisted arrest. *See* Appellant's Brief at 16-17. But whether Mr. Gant was resisting arrest when Officer Hartman shot him is an issue of disputed fact that a court cannot resolve in its analysis of qualified immunity and, because of this, the district court's citation and discussion of *White v. Gerardot* were appropriate. After reviewing this controlling case, the district court concluded: "[I]t was determined that, at the time Defendant Hartman shot the Plaintiff, the Plaintiff did not in fact have a gun in his hands, and a reasonable juror could conclude that he was in the process of obeying Defendant Hartman's commands. Therefore, the Court cannot grant summary judgment as to qualified immunity regarding the Plaintiff's claim for excessive force against Defendant Hartman." Short App., Opinion and Order at 45. If, at trial, Mr. Gant proves the allegations in his claim against Officer Hartman, the officer's use of deadly force was objectively unreasonable as clearly established at the time by controlling cases including *White v. Gerardot.*

The district court was correct not to resolve genuine disputes of fact in favor of Officer Hartman or import disputed issues of fact in its qualified immunity analysis. The district court was conducting an analysis that was "simply an application of the more general rule that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S.

Ct. 1861, 1866 (2014) (per curiam) (quotation marks and citations omitted) (officer who "believed" suspect presented an "immediate threat to the safety of the officers" not entitled to qualified immunity). "Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard . . . . Accordingly, courts must take care not to define a case's context in a manner that imports genuinely disputed factual propositions." *Id*. (quotation marks and citations omitted). Further, although the facts of *White v. Gerardot* are analogous to the immediate case and correctly cited by the district court, a holding on the precise fact pattern at issue is not necessary if the public officer had reasonable warning of the unconstitutionality of the alleged conduct. *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012) (reversing grant of qualified immunity on excessive force claim). "To be established clearly . . . there is no need that the very action in question have previously been held unlawful. The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that 'the easiest cases don't even arise.'" *Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364, 377 (2009) (citations, brackets, and quotation marks omitted).

The facts of the cases cited by Officer Hartman as providing a legal basis for his use of deadly force and claim of qualified immunity are, unlike *White v. Gerardot*, distinguishable and the holdings of the majority of these case are not controlling. *See* Appellant's Brief at 21-27. Following his discussion of *Ford*, Officer Hartman cites *Tom v. Voida*, 963 F.2d 952 (7th Cir. 1992). *Id*. at 21-22. It is unclear why Officer Hartman cites this case in his analysis of qualified immunity. The officer in *Tom*, unlike here, resorted to the use of deadly force only after, as the appellant acknowledges, "a violent physical struggle" between the officer and the suspect. *Id*. at 21. In fact, the officer in *Tom* only shot the suspect after a chase and two physical fights

between the officer and suspect, one of which involved the suspect repeatedly beating the officer's head into the ground. *Tom*, 963 F.2d at 955. Next, Officer Hartman cites *Frane v. Kijowski*, 992 F.Supp. 985 (N.D. Ill. 1998). *See* Appellant's Brief at 22. Officer Hartman claims this district court decision shows "that an officer may form a reasonable belief that danger exists by reliance on appearances, and that the Fourth Amendment does not require an officer to wait until a suspect shoots to confirm that a serious threat of harm exists." *Id*. That may be true, but that does not mean case law permits an officer to resort instantly to deadly force based on a hunch. The facts of the immediate case, further, are distinguishable from *Frane* wherein officers actually saw a suspect pointing a firearm-shaped object at a victim, although the object was later revealed to be a pellet gun. 992 F.Supp. at 989. Here, there was no gun, there was no object, and it is in genuine dispute whether Mr. Gant provided any resistance at all prior to being shot almost immediately upon his presentation to Officer Hartman.

The remaining non-controlling opinions Officer Hartman relies upon are distinguishable and not of assistance in the analysis of his request for qualified immunity. *See* Appellant's Brief at 23-27, *Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (officer shot suspect only after he reasonably perceived suspect to have a firearm and resist arrest commands); *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) (officer shot suspect only following car chase from crime scene and suspect's repeated refusals to comply with arrest commands); *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (officer shot suspect only after high-speed car chase and after suspect rammed the officer with his vehicle); *Blossom v. Yarbrough*, 429 F.3d 963 (10th Cir. 2005) (officer shot suspect only after suspect had assaulted him and was rushing at him and yelling he was going to take the officer's gun); *Flynn v. Mills*, 361 F.Supp.2d 866 (S.D. Ind. 2005) (officer shot armed plaintiff only after he continued to approach officers with gun after warnings to put down the gun

and stop approaching officers); *Liebenstein v. Crowe*, 826 F.Supp. 1174 (E.D. Wis. 1992) (officer shot suspect only after suspect repeatedly fired gun at neighbor's residence). None of these cases permit an officer to rely on a subjectively unreasonable perception of a threat in resorting to the use of deadly force against a suspect. *See Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th. Cir. 1993) (dismissing officer's appeal of denial of qualified immunity for lack of jurisdiction).

Therefore, if the Court finds jurisdiction to review this appeal, the order of the district court denying qualified immunity to Officer Hartman should be affirmed.

## **CONCLUSION**

The appeal should be dismissed for lack of jurisdiction. In the alternative, the judgment of the district court should be affirmed.

> Respectfully submitted,
>
> /s/ David W. Frank
> David W. Frank
> CHRISTOPHER C. MYERS & ASSOCIATES
> 809 South Calhoun Street, Suite 400
> Fort Wayne, IN 46802-2307
> (260) 424-0600
> Email: dfrank@myers-law.com
> Counsel for Plaintiff-Appellee, Anthony Gant

December 13, 2018

# CERTIFIACATE OF COMPLIANCE

This brief complies with the length limitation of Fed. R. App. P. 32(a)(7)(B) because it does not exceed 8,798 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 with Times New Roman size 12 font.

Respectfully submitted,

/s/ David W. Frank
David W. Frank
CHRISTOPHER C. MYERS & ASSOCIATES
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802-2307
(260) 424-0600
Email: dfrank@myers-law.com
Counsel for Plaintiff-Appellee, Anthony Gant

December 13, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2018, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the

CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the CM/ECF system.


Respectfully submitted,

/s/ David W. Frank
David W. Frank
CHRISTOPHER C. MYERS & ASSOCIATES
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802-2307
(260) 424-0600
Email: dfrank@myers-law.com
Counsel for Plaintiff-Appellee, Anthony Gant

December 13, 2018